731 P.2d 363

Homer GARZA, d/b/a Sunshine Dairy, for himself as insured, and in behalf of Camilla, a/k/a Kammy Villalobos, Claimant and also insured, Plaintiffs-Appellees,

v.

GLEN FALLS INSURANCE COMPANY and Continental Insurance Companies, Defendants-Appellants.

No. 16633.

Supreme Court of New Mexico.

Dec. 17, 1986.

Rehearing Denied Jan. 30, 1987.

Farlow, Simone, Roberts & Weiss, LeRoi Farlow, Albuquerque, for defendants-appellants.

Edward E. Triviz, Las Cruces, for plaintiffs-appellees.

## OPINION

FEDERICI, Justice.

This litigation arose out of a one vehicle automobile accident which occurred on May 18, 1985, in Dona Ana County, New Mexico. At that time, Adriel Garza, the son of plaintiff-appellee Homer Garza (plaintiff), was driving a vehicle owned by plaintiff and insured by defendants. Plaintiff-appellee Camilla Villalobos, also known as Kammy Villalobos (Villalobos), was a passenger in the vehicle driven by Adriel Garza. Both plaintiff and defendants filed motions for summary judgment. The court granted plaintiff's motion for partial summary judgment and denied defendants' motion for summary judgment. This Court granted an interlocutory appeal. We reverse.

The accident occurred while Adriel Garza was travelling at excessive speeds and was being chased by the New Mexico State Police. After being chased by the police vehicles for several miles, the motor vehicle driven by Adriel Garza ran off the road and turned over. As a result of the accident, the passenger, Villalobos, allegedly sustained personal injuries.

Villalobos has not instigated litigation against either Adriel Garza or plaintiff to recover damages for personal injuries sustained in the accident. The caption of the complaint reads: "HOMER GARZA d/b/a SUNSHINE DAIRY, Vado, New Mexico, for Himself, as Insured, and in Behalf of Camilla (a/k/a Kammy) Villalobos, Claim-

ant and Also Insured." There are no allegations in the complaint to support plaintiff's purported representation *in behalf of Villalobos.*

Plaintiff's first amended complaint asked for relief based upon several causes of action. Plaintiff asked for punitive damages against Glen Falls Insurance Company and Continental Insurance Companies (defendants) for bad faith denial of insurance coverage to plaintiff and Adriel Garza. Plaintiff also asked for compensatory damages for breach of contract and breach of fiduciary obligations. Plaintiff's motion for partial summary judgment asked the trial court to determine that he was entitled to insurance coverage under defendants' policies at the time of the accident.

Defendants insured plaintiff under Policy No. RFD 49670. In connection with this particular automobile policy, defendants, through a "drivers exclusion endorsement," excluded all coverage of plaintiff's insured automobiles while they were being driven or operated by Adriel Garza, effective December 1, 1984. The drivers exclusion endorsement to the policy was signed by plaintiff and reads:

> In consideration of the premium for which the policy is written, it is agreed that the company shall not be liable and no liability or obligation of any kind shall be attached to the company for losses or damages sustained after the effective date of this endorsement while any motor vehicle insured hereunder is driven or operated by *ADRIEL GARZA.*

The drivers exclusion endorsement was requested by defendants and was attached to the policy because Adriel Garza, plaintiff's son, had on previous occasions been involved in accidents, been convicted of driving while intoxicated, been cited for speeding, and had his driver's license revoked. Plaintiff, in his deposition, stated that he understood that there would be no insurance for him or for his son, Adriel, at any time that Adriel was driving one of

plaintiff's cars after this drivers exclusion endorsement became effective. He acknowledged that he was told by defendants' insurance agent that his son was being excluded from the policies for the reasons mentioned above. Plaintiff knew and understood that Adriel was not to drive plaintiff's motor vehicles after the drivers exclusion endorsement became effective, and that if he did, there would be no coverage under the policy while Adriel was driving. Defendants denied insurance coverage for the accident of May 18, 1985, to plaintiff and Adriel Garza because of the drivers exclusion endorsement.

Defendants moved for summary judgment on the following grounds: (1) Plaintiff signed the drivers exclusion endorsement, set forth above, which was attached to the policy in question and excluded coverage while the motor vehicle was driven by Adriel Garza; and (2) Plaintiff was aware of the meaning of the drivers exclusion endorsement and knew there would be no coverage under the policy in question at any time any motor vehicle insured under the policy was driven by Adriel Garza.

The trial judge entered an order denying defendants' motion for summary judgment and granting plaintiff's motion for partial summary judgment. Relying on *State Farm Automobile Insurance Co. v. Kiehne,* 97 N.M. 470, 641 P.2d 501 (1982), the judge reasoned that *uninsured motorist coverage* can be bargained away since it is not mandatory coverage, whereas *liability insurance coverage* cannot be bargained away since it is statutorily mandated. We disagree.

The single issue presented by both motions for summary judgment concerns the validity of the drivers exclusion endorsement and whether that exclusion governs not only the driver of the vehicle, the insured's son, but also extends to liability incurred by others because of the conduct of the son.

This Court has held that a drivers exclusion endorsement is valid and enforceable

insofar as it concerns uninsured motorist coverage. *Kiehne.* However, this is a case of first impression because *liability coverage* of a named insured is involved.

The drivers exclusion endorsement provides that the company shall not be liable and no liability or obligation of *any kind* shall be attached to the company for damages sustained while any motor vehicle insured under the policy is driven by Adriel Garza, son of the insured.

In *Kiehne,* the drivers exclusion endorsement was clear and unambiguous and excluded "any kind" of liability when the excluded driver was driving. In that case, the Court held that when the excluded driver was driving, "no one could be an 'insured' and claim coverage under the uninsured motorist provision of the policy." *Id.* at 472, 641 P.2d at 503.

We now hold that the clear and unambiguous drivers exclusion endorsement in this case likewise relieves defendants from their obligations of any kind under *liability* provisions of the policy. We note that our holding is consistent with those of several other jurisdictions. *See, e.g., Bankers & Shippers Insurance Co. v. Phoenix Assurance Co.,* 210 So.2d 715 (Fla.1968); *Nelson v. Southern Guaranty Insurance Co.,* 221 Ga. 804, 147 S.E.2d 424 (1966); *Meyer v. Aetna Casualty Insurance Co.,* 46 Ill. App.2d 184, 196 N.E.2d 707 (1964); *Miller v. State Farm Mutual Automobile Insurance Co.,* 204 Kan. 694, 466 P.2d 336 (1970); *Deutsch v. State Farm Mutual Automobile Insurance Co.,* 457 S.W.2d 823 (Mo.App.1970); *Rooney v. Agricultural Insurance Co.,* 156 Mont. 118, 476 P.2d 783 (1970); *State Farm Mutual Automobile Insurance Co. v. Pierce,* 182 Neb. 805, 157 N.W.2d 399 (1968).

Plaintiff contends that the uninsured motorist statutes supercede the drivers exclusion endorsement. On the contrary, we note that the use of such a drivers exclusion endorsement is expressly permitted under the Mandatory Financial Responsibil-ity Act. NMSA 1978, Section 66-5-221(K) (Repl.Pamp.1984) reads:

> *The certified motor vehicle liability policy may be endorsed to eliminate a named driver.* Such endorsement must bear the signatures of the named insured. Forms for such named drivers exclusion must be substantially similar to the form provided in Section 66-5-222 NMSA 1978. Such endorsement applies only to private passenger motor vehicles. (Emphasis added.)

NMSA 1978, Section 66-5-222 (Repl. Pamp.1984) provides the language to be used in a drivers exclusion endorsement form:

> In consideration of the premium for which the policy is written, it is agreed that the company shall not be liable and no liability or obligation of any kind shall be attached to the company for losses or damages sustained after the effective date of this endorsement while any motor vehicle insured hereinunder is driven or operated by (name of excluded driver(s)).

The drivers exclusion endorsement attached to defendants' policy in this case is exactly in the same form as set forth above in Section 66-5-222.

The operative language of the exclusion, that the insurer "shall not be liable and no liability or obligation of *any kind* shall be attached," is clear and unambiguous and withholds all coverage under the policy when Adriel Garza is driving. The Mandatory Financial Responsibility Act confirms this result since the Act specifically authorizes the use of the drivers exclusion endorsement and provides the words to be used in the drivers exclusion form. We cannot rewrite the insurance contract for the parties. Where the exclusion is clear and unambiguous we are required to enforce its provisions. *See Thompson v. Occidental Life Insurance Co.,* 90 N.M. 620, 567 P.2d 62 (Ct.App.), *cert. denied,* 91 N.M. 4, 569 P.2d 414 (1977).

Our opinion is limited to a determination of the legal issue submitted to us. We have been called upon to decide whether Homer Garza, plaintiff, has insurance coverage for the May 18, 1985 accident under the policy issued by defendants. We hold that plaintiff has no coverage for the accident under the automobile insurance policy as modified by the drivers exclusion endorsement. We do not determine in this case whether there are other causes of action or issues which may be available to or against other parties.

The judgment of the trial court is reversed with instructions to enter summary judgment for defendants and to deny summary judgment to plaintiff.

IT IS SO ORDERED.

STOWERS, C.J., and RIORDAN, J., concur.